```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
_____

MARY M. GILL,                       )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )      No. 04-2430-MaV
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )
_____

                      REPORT AND RECOMMENDATION
_____
```

Plaintiff, Mary M. Gill, appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income ("SSI") based on disability under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381—1382c (2006) (the "Act"). On appeal, Gill argues that the administrative law judge's ("ALJ") decision that she was not disabled is not supported by substantial evidence. The appeal was referred to the United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, it is recommended that the appeal be denied, and the Commissioner's decision be upheld.

                      PROPOSED FINDINGS OF FACT

A.      <u>Procedural History</u>

On April 8, 1993,[1] Gill filed an application with the Social Security Administration ("SSA") for SSI benefits, alleging a disability onset date of April 8, 1993, due primarily to back pain plus hypertension, chest pain, headaches, and dizziness. (R. at 73—85.) The SSA denied her application on September 29, 2003, and also denied it on reconsideration. (R. at 88—90, 93—95.)

On November 29, 1993, Gill filed a request for a hearing by an ALJ, which was held on September 16, 1994. (R. at 96, 285.) Gill appeared at the hearing with her attorney, Larry Boling. (R. at 285.) The ALJ issued a Notice of Decision on August 23, 1995. (R. at 15—17.) The unfavorable decision found, among other things, that Gill was not disabled as defined by the Act at any time through the date of the decision. (R. at 18-32.) Accordingly, the ALJ decided that Gill was not entitled to SSI benefits. (R. at 32.)

On August 29, 1995, Gill appealed the ALJ's decision to the Appeals Council and submitted additional evidence at that time. (R. at 9, 12.) The Appeals Council denied Gill's request for review and issued a notice of its decision on October 12, 1996. (R. at 4—5.) With the Appeals Council's denial of the request for review, the ALJ's decision became the Commissioner's final

---

[1] Protective Filing Date.

decision.  (R. at 4.)

Having exhausted her administrative remedies, Gill filed a complaint in federal court on November 26, 1996, *Gill v. Callahan*, No. 96-cv-924 (W.D. Mich.), seeking judicial review and alleging that the ALJ's August 23, 1995 decision was not supported by substantial evidence.  (R. at 379—81.)  On March 17, 1997, the case was remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) on stipulation of the parties to allow the ALJ to consider the new evidence submitted by Gill to the Appeals Council, as well as to obtain additional consultative examinations and vocational expert testimony, as necessary, and to provide Gill the opportunity to testify at a supplemental hearing.  (R. at 382—86.)

A supplemental hearing before a different ALJ was held on September 29, 1997, in Forrest City, Arkansas.  (R. at 268.)  Gill appeared along with her attorney, Mike Sherman.  (R. at 268.)  On February 27, 1998, the new ALJ issued an unfavorable decision, denying Gill's claim for SSI benefits.  (R. at 265—73.)  Gill appealed this second unfavorable decision to the Appeals Council, and on May 26, 2004, the Appeals Council again denied Gill's request for review. ( R. at 243—46.)  Thus, the ALJ's February 27, 1998 decision became the Commissioner's final decision.  (R. at 244.)  Gill then filed the present lawsuit in this court, seeking judicial review of the ALJ's February 27, 1998 decision.

Meanwhile, Gill filed a new application for benefits on February 28, 1997,[2] alleging an onset date of February 28, 1997. (R. at 492.) After a hearing, on April 19, 2000, the ALJ issued a favorable decision on the second application. (R. at 254—56.) The decision found that Gill was disabled and thus entitled to benefits from February 28, 1998, onward. (R. at 258—62.) The ALJ declined to award benefits for the one-year period of the filing date, February 28, 1997, up to the prior final decision of February 28, 1998, because he found no new and material information which would provide a basis to reopen the prior decision of the ALJ on February 28, 1998. (R. at 258.) Thus, judicial review is limited to the period beginning with the 1993 application up until February 28, 1998.

B.   **Testimony at the September 29, 2007 Supplemental Hearing**

At the time of the September 29, 1997 supplemental hearing, Gill was 49 years old. (R. at 824.) She did not graduate from high school, but has the equivalent of a 12th grade education, having obtained her GED. (R. at 824.) She was approximately 5'4" to 5'5" tall and weighed approximately 282 pounds. (R. at 825.)

Gill was taking the following medications at the time of the hearing: Ibuprofen three times per day for back, legs, and joint

---

[2]   **Protective Filing Date.**

pains (R. at 431, 844); Gulcotrol and Glucophage for diabetes (R. at 431, 844—45); Zocor for cholesterol (R. at 431, 830, 845); Premarin for menopause (R. at 431, 845); Nitrostat for chest pains (R. at 831—32, 845—46), and Plendil and fluid pills for blood pressure (R. at 845.) Gill complained that her medications often made her feel drowsy and sleepy. (R. at 828, 830, 834.)

As to her daily activities, Gill testified that she was able to bathe and dress herself, do all the housework, do the laundry, prepare dinner, and fold clothes. (R. at 835—36.) At times, she had to stop and take periodic breaks. (R. at 835—36.) At the September 1997 hearing, Gill also testified that she attended church about once a month. (R. at 839.) She had a driver's license but she did not drive because she did not have a car. (R. at 839.) She testified that she could walk about a quarter of a mile. (R. at 833.)

In addition to caring for herself, Gill told the ALJ that she had cared for her elderly mother, who was wheelchair-bound, from August 23, 1997 to September 18, 1997. (R. at 837.) In caring for her mother, she did her mother's laundry, prepared and served food to her mother, and assisted her mother in using the bathroom. (R. at 836—37.)

Gill also testified about her medical problems. She complained of swelling in her right hand and right wrist area

5

because of a cyst in her hand (R. at 828); numbness in her left thumb and index finger (R. at 828–29); pain in her legs, knees, and back (R. at 832); swelling in her knees and ankles (R. at 838); dizziness (R. at 830); and headaches. (R. at 831.) Although she complained about sporadic chest pains, she acknowledged that she had never been diagnosed with any heart problems and that diagnostic tests were negative for heart problems. (R. at 831–32, 846.)

Gill believed that she could not work a job eights hours a day, five days a week, primarily because of drowsiness from her medications, her back pain, and the swelling in her right hand. (R. at 828.) She testified, however, that she could probably perform a job that required her to sit for six hours in an eight-hour day if she could sit for a few hours and then get up and move around. (R. at 834.) She further testified that she could stand for maybe thirty minutes or so before she had to sit down again. (R. at 843.) In addition, she testified that both her blood pressure and diabetes are controlled by medication. (R. at 845.)

C.  Medical History

Gill suffers from numerous aliments, including back pain, leg pain, knee pain, foot pain, chest pain, headaches, dizziness, hypertension, obesity, diabetes, gastroesophageal reflux disease ("GERD"), carpal tunnel syndrome, and blurred vision. (Pl.'s Br.

6

2–11.) Between April of 1993 and February 28, 1998, Gill was examined and treated by no less than eight doctors: (1) William Wright, M.D., internal medicine (R. at 152–59); (2) Mohammed B. Khan, M.D., internal medicine (R. at 160–62); (3) John Spriegel, M.D. (R. at 185–86, 195, 207–17); (4) Michael J. Simpson, M.D., internal medicine (R. at 189–92); (5) Ronald L. McKey, M.D., vision (R. at 641); (6) Jerome L. Kuhnlein, M.D., Jr. (R. 238–40); (7) Dan W. Web, M.D. (R. at 426); and (8) Morgan Collins, M.D. (R. at 738–46.) Gill has carefully summed up her history of medical visits and treatment from 1993 through 1998 in her brief supporting her appeal, and the court will not repeat the history in detail. (*See* Pl.'s Br. 3–11.) In lieu thereof, the court will point to specific relevant entries in the medical record in its analysis of Gill's arguments on appeal.

D.   <u>The ALJ's Decision</u>

Using the five-step disability analysis[3], the ALJ concluded

---

[3]   Entitlement to SSI is determined by a five-step sequential analysis set forth in the Social Security Regulations. 20 C.F.R. § 416.920. First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. *Id.* § 416.920(a)(4)(I) and (b). Second, a finding must be made that the claimant suffers from severe impairment. *Id.* § 416.920(a)(4)(ii). Third, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations in Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. *Id.* § 416.920(d). If

that Gill was not disabled at any time through the date of his decision, after considering the record and Gill's testimony. (R. at 271–72.) Under the first step, the ALJ found that Gill had not "engaged in substantial gainful activity since 1993." (R. at 271.) Second, the ALJ concluded that Gill suffered from severe impairments of hypertension, obesity, mechanical back pain, and GERD. (R. at 263, 271.) Under the third step, however, the ALJ concluded that Gill did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment in Appendix 1 to Subpart P of Regulations No. 4. (R. at 269, 271.)

Accordingly, he had to then determine whether Gill retained the residual functional capacity to perform past relevant work or could adjust to other work. (R. at 269.) The ALJ found that Gill retained the residual functional capacity ("RFC") for sedentary work.[4] (R. at 270–72.) Using that RFC, he then determined that

---

the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the residual functional capacity to return to any past relevant work. *Id.* § 416.920(a)(4)(iv) and (e). If the ALJ finds the claimant unable to perform past relevant work, then, at the fifth step, the ALJ must discuss whether the claimant can perform other work which exists in significant numbers in the national economy. *Id.* §§ 416.920(a)(4)(v) and (g), 416.960(c).

[4]     Sedentary work is defined as "lifting no more than ten pounds at a time and occasionally lifting or carrying articles," and involves sitting with walking and standing required

Gill was unable to perform her past relevant work. (R. at 272.) Finally, at the fifth step, the ALJ relied on the Medical-Vocational Guidelines ("grid"), specifically Rule 202.21 of Table No. 2 of Appendix 2 to Subpart P of Regulations No. 4, which directed a conclusion that Gill was not disabled based on her RFC, age, education, and work experience. (R. at 271.)

## PROPOSED CONCLUSIONS OF LAW

The sole issue on appeal is whether the ALJ erred in relying on the grid to direct a finding of disability.[5] Gill argues that the ALJ's application of the grid was improper because her capacity to perform a full range of sedentary work was significantly compromised by non-exertional limitations. (R. at 15—18.) Rather than relying on the grid alone, Gill argues that the ALJ should have obtained vocational expert testimony. (Pl.'s Br. 15—18.) Gill requests a remand of the case for the purpose of taking vocational expert testimony. (R. at 18.)

A.   Standard of Review

---

occasionally. 20 C.F.R. § 416.967(a).

[5] Gill originally raised on additional argument on appeal as to the ALJ's determination that she did not meet the medical criteria for obesity, which at the time was listed as a disability at 20 C.F.R. pt. 404, subpt. P, app. 1 § 9.09 (1997). (Pl.'s Br. 13—14.) This argument was rendered moot by the Sixth Circuit's decision in *Combs v. Commissioner*, 459 F.3d 640 (6th Cir. 2006), and was abandoned by Gill on appeal. (*See* Pl.'s Mot. to Reopen, Doc. No. 27, Oct. 31, 2006.)

Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision, and whether the Commissioner used the proper legal criteria in making the decision. 42 U.S.C. § 405(g); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Abbott*, 905 F.2d at 923. If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

B.   <u>The ALJ's Use of the Medical-Vocational Guidelines or "Grid" to Determine Residual Functional Capacity</u>.

Once the ALJ determined that Gill's impairments did not satisfy any of the criteria in the Listing of Impairments of Appendix 1 to Subpart P and that her RFC of "sedentary" prevented her from returning to her past relevant work, the ALJ then had to determine if the severity of the impairment, or combination of impairments, prevented Gill from performing a significant number of jobs in the national economy that are consistent with her functional limitations, age, education, and work experience of the claimant.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. § 416.920(a)(4)(v) and (g).  It is a long standing judicial view that at this step the burden shifts to the Commissioner.  *Walters*, 127 F.3d at 529; *Walker v. Bowen*, 834 F.2d 635, 640 n.3 (7th Cir. 1987).

In making the determination at step five, the Commissioner can carry the burden by the use of the grid or by expert testimony. In many cases, use of the grid may direct a finding of disabled or not disabled based on the claimant's age, education, and transferable work skills.  20 C.F.R. § 416.969; *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990).  If any of the findings of fact do not exactly coincide with the grid's

11

definitions, the grid is used only as a guide. *Kirk*, 667 F.2d at 528; *see also* 20 C.F.R. § 416.969. In cases where the grid is not used to direct a finding of "disabled" or "not disabled," expert testimony is required to satisfy the Commissioner's burden of proof at step five. *Kirk*, 667 F.2d at 531.

Further, in cases where the claimant suffers from nonexertional limitations in addition to exertional limitations, the use of the grid may or may not be appropriate. The regulations recognize that a claimant may suffer from both exertional and non-exertional limitations.[6] *See* 20 C.F.R. § 416.969a. The use of the grid to help make a disability determination for a claimant who has both exertional and nonexertional limitations has been approved by the Sixth Circuit under certain circumstances, i.e. if the nonexertional limitation does not significantly limit the ability to do a full range of work at the appropriate RFC level. *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771—72 (6th Cir.

---

[6] The regulations define "nonexertional" limitations as "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, [which] affect only your ability to meet the demands of jobs other than the strength demands [sitting, standing, walking, lifting, carrying, pushing, and pulling]." 20 C.F.R. § 416.969a(c)(1). Examples of nonexertional limitations include difficulty functioning because of nervousness, anxiety, or depression; difficulty in maintaining attention or concentration; difficulty with understanding or remembering detailed instructions; and "difficulty performing the manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching." *Id.*

1987); *Kirk,* 667 F.2d at 528; *see also* 20 C.F.R. § 416.969a(d). If, however, the claimant's nonexertional impairment is found to significantly limit the ability to do a full range of work at the designated level, then directly applying the grid is inappropriate and it may only be used as a framework. *Cole*, 820 F.2d at 772; *Kirk*, 667 F.2d at 528–29. In that situation, expert testimony is needed to assist the ALJ in making a determination at step five. *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk*, 667 F.2d at 531. A mere allegation of a nonexertional limitation is not sufficient to preclude the use of the grid; instead, it must be determined that it is a severe nonexertional impairment. *Cole*, 820 F.2d at 772. If the ALJ discredits a claimant's complaints of nonexertional impairments, the ALJ is not required to consult with a vocational expert and may properly rely on the grid. *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 142 (6th Cir. 1987).

Gill argues that use of the grid was improper in her case because she suffers from significant nonexertional impairments which preclude the ALJ's reliance on the grid alone to determine if she is disabled. (Pl.'s Br. 16.) She contends that her severe impairments of hypertension, obesity, mechanical back pain, and GERD result in significant nonexertional limitations. (Pl.'s Br. 17–18.) Specifically, she states that her hypertension results in

13

nonexertional limitations of headaches, lightheadedness, easy fatigability, nausea, and blurred vision. (Pl.'s Br. 18.) In addition, she contends that her carpal tunnel syndrome, which the ALJ failed to recognize as a severe impairment, resulted in nonexertional limitations preventing her from being able to grasp, handle, and finger objects. (Pl.'s Br. 17–18.) Gill also claims that her obesity resulted in nonexertional limitations on her mobility and endurance. (Pl.'s Br. 17.) She further contends that her diabetes causes significant nonexertional limitations such as polyphagia (excessive eating) and polyuria (excessive urination). (Pl.'s Br. 18.)

In this case, the ALJ found that Gill's nonexertional impairments did not significantly limit her ability to perform work at the sedentary work exertional level and that Gill's testimony concerning her daily activities was inconsistent with her alleged nonexertional limitations. Although the symptoms and limitations described by Gill in her brief are associated with impairments from which Gill suffers and could conceivably result from Gill's impairments, there is no evidence in the record to support a finding that Gill actually suffered from them as suggested in her brief to a significant degree. While it is undisputed that Gill suffers from bilateral carpal tunnel syndrome documented by nerve conduction studies in November 1997, there is no evidence in the

record to support a finding that her bilateral carpel tunnel syndrome caused any significant limitation on her ability to function. (*See* R. at 795.) Her medical records during the relevant time period noted bilateral carpal tunnel syndrome on December 18, 1997 and January 19, 1998, visits to Dr. Webb. (R. at 786.) From the January 19, 1998 visit, Dr. Webb's records indicate that Gill complained of discomfort in her wrists. (R. at 786.) It was recommended that she see an orthopedic surgeon at that time, but Gill declined to. (R. at 786.) On February 9, 1998, Gill underwent a consultative physical examination performed by Dr. Collins. (R. at 738–46.) It was noted that Gill suffered from carpal tunnel syndrome with numbness to thumb and first and second digits and a ganglion cyst on her right wrist with mild swelling greater on the left side. (R. at 742.) Despite these symptoms, Dr. Collins found Gill had normal range of motion in her wrists and hands, could touch fingertips to palm, oppose thumb to fingers, and her grip strength was 100%. (R. at 742–43.) Thus, there was substantial evidence in the record to support a determination by the ALJ that Gill's carpal tunnel syndrome did not impose significant non-exertional limitations on Gill's ability to perform sedentary work during the relevant time period from April 1993 to February 1998.

As to Gill's obesity, the record is clear that Gill suffers

from obesity even though she does not meet or equal the medical criteria for the listed impairment of obesity. Despite her weight problems, however, the ALJ found that Gill had fairly normal range of motion of her back. (R. at 464.) On July 7, 1993, Gill underwent a consultative physical examination by Dr. Wright. Dr. Wright noted that Gill had normal range of motion in her spine and extremities. (R. at 154—56.) He opined that she could sit, stand, walk short distance, and carry small objects. (R. at 159.) At the February 9, 1998 physical exam by Dr. Collins, Gill had normal range of motion in her cervical and lumbar spine and in her extremities except for slight limitations in her knees and hips. (R. at 741—42.) Dr. Collins noted that Gill was "able to perform ROM activities with minimal discomfort," despite her complaints of lumbar and knee pain. (R. at 742.) Thus, there is substantial evidence in the record that Gill's obesity did not impose any significant nonexertional impairments during the relevant time period.

Nor is there any evidence in the record that Gill's diabetes caused her to suffer from any symptoms of such as polyphagia and polyuria or any significant nonexertional limitations during the relevant time period. In fact, medical records from Mercy Health Clinic show that Gill's diabetes was controlled for the most part with medication during the relevant time period. (R. at 343—76.)

Gill testified to the same at hearing on September 29, 1997. (R. at 845.) Likewise, Gill testified that her hypertension was controlled with medication. (R. at 845.) If an impairment can be controlled with medication, it cannot support a finding of disability. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

The ALJ further discredited Gill's complaints of disabling headaches and dizziness as inconsistent with her daily activities. Gill testified in the 1997 hearing that she suffers from headaches three to four times a week, which last anywhere from several hours to a couple of days and interrupts her housework. (R. at 830–31.) Yet, in the 1997 hearing, Gill also testified that "she helps take care of her wheelchair-bound mother and does the cooking and laundry." (R. at 465.) In the 1995 ALJ opinion, the ALJ noted that plaintiff could dress herself, iron and fold clothes, shop, dust, and cook. (R. at 326–27.) Thus, the ALJ concluded that Gill's daily activities were consistent with sedentary work with some pain or functional limitations. Implicit in this finding is that Gill's claimed nonexertional limitations did not significantly limit her ability to perform sedentary work.

Accordingly, this court submits that the ALJ's decision that Gill did not suffer from any nonexertional limitations that would significantly erode the sedentary occupation base and preclude the

use of the grid to determine disability was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

IT IS SO ORDERED this 17th day of August, 2007.

                                              s/ Diane K. Vescovo
                                              DIANE K. VESCOVO
                                              UNITED STATES MAGISTRATE JUDGE